## OKLAHOMA *v.* ARKANSAS

No. 79, Orig.    Decree entered July 1, 1985

This cause came on this date for final adjudication upon the Report of Special Master, and the Court, being fully advised in the premises, finds that the Report of Special Master should be adopted and approved as submitted, and a final Decree entered accordingly.

### DECREE

IT IS ORDERED, ADJUDGED, AND DECREED THAT:

1. The Report of Special Master is hereby adopted and approved in its entirety, as submitted.

2. This Decree determines the geographical location of the common boundary between the States of Oklahoma and Arkansas in a particular area bordered by Le Flore County, Oklahoma, and Sebastian County, Arkansas. More particularly, this Decree determines which State has sovereign control over a tract of land (the "disputed tract") which is shown by the "Original Field Notes of Township 8 and 9 North Range 32 West" of the original government surveyor, William Clarkson, Jr., dated December 28, 1828, and by the map of the United States Surveyor John Fisher prepared in 1904 to contain approximately 55 acres bounded on the east by the western boundary of the Territory of Arkansas in 1828 and the State of Arkansas in 1904, and bounded on the west by the Poteau and Arkansas Rivers.

3. The disputed tract was included in certain lands ceded by the United States to the Choctaw Indian Nation in 1820. In the "Treaty with the [Western] Cherokees, 1828," the western boundary of the Territory of Arkansas was defined as follows:

> "The Western boundary of Arkansas shall be, and the same is, hereby defined, viz: A line shall be run, com-

mencing on Red River, at the point where the Eastern Choctaw line strikes said River, and run due North with said line to the River Arkansas, thence in a direct line to the South West corner of Missouri." 7 Stat. 311 (May 6, 1828).

When the State of Arkansas was admitted to the Union in 1836, the Congress of the United States adopted the line described above in the Treaty of 1828 as the western boundary of the State of Arkansas. 5 Stat. 50 (June 15, 1836).

4. In 1905, the Congress of the United States gave the "consent of the United States" to the State of Arkansas to extend the western boundary of Arkansas to include the disputed tract by a Congressional Act which became a law of the United States, reading in part as follows:

*"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That the consent of the United States is hereby given for the State of Arkansas to extend her western boundary line so as to include all that strip of land in the Indian Territory lying and being situate between the Arkansas State line adjacent to the city of Fort Smith, Arkansas, and the Arkansas and Poteau rivers, described as follows, namely: Beginning at a point on the south bank of the Arkansas River one hundred paces east of old Fort Smith, where the western boundary line of the State of Arkansas crosses the said river, and running southwesterly along the south bank of the Arkansas River to the mouth of the Poteau; thence at right angles with the Poteau River to the center of the current of said river; thence southerly up the middle of the current of the Poteau River (except where the Arkansas State line intersects the Poteau River) to a point in the middle of the current of the Poteau River opposite the mouth of Mill Creek, and where it is intersected by the middle of the current of Mill Creek; thence up the middle of Mill Creek to the Arkansas State line; thence northerly along

the Arkansas State line to the point of beginning . . . ."
Act of February 10, 1905, 33 Stat. 714.

5. The Congress of the United States and the State of Arkansas had the power, acting together, to extend the western boundary of the State of Arkansas in 1905, without the consent of the Choctaw and Chickasaw Nations to the alteration of the eastern boundary of their lands. The Congress of the United States had the power to unilaterally consent to a change in the boundary of the Choctaw and Chickasaw lands and to transfer sovereign control over the disputed tract to the State of Arkansas. The Congress of the United States fully exercised this power in the Act of February 10, 1905, quoted in paragraph 4 above. On February 16, 1905, the State of Arkansas took appropriate legislative action to extend its western boundary as permitted by the consent of the United States in the portion of the Congressional Act quoted above in paragraph 4. Act No. 41, February 16, 1905 (now codified as Ark. Stat. Ann. § 5–101 (Repl. 1976)). Thus, the disputed tract became part of the State of Arkansas in 1905 by the joint action of the Congress of the United States and the State of Arkansas, and remains so to this day.

6. The parties stipulated that the State of Arkansas has exercised continuous sovereignty, dominion, control, and exclusive criminal and civil jurisdiction over the disputed tract since the enactment of Act No. 41 by the Arkansas Legislature on February 16, 1905; that Sebastian County, Arkansas, has continuously levied and collected real property taxes within the disputed tract; and that Le Flore County, Oklahoma, has never levied or collected taxes within the disputed tract. Pursuant to the holding in *California* v. *Nevada*, 447 U. S. 125 (1980), the doctrine of acquiescence applies to the boundary dispute between the State of Oklahoma and the State of Arkansas. Therefore, as a separate ground, the disputed tract has become and continues to be a part of the State of Arkansas under the doctrine of acquiescence.

7. The disputed tract of land is a part of the State of Arkansas.

8. Judgment be, and it is hereby, entered in favor of the State of Arkansas and against the State of Oklahoma, dismissing the claims of the State of Oklahoma with prejudice.

9. All costs are hereby taxed against the State of Oklahoma. All such costs have been paid by the State of Oklahoma.

The Special Master is hereby discharged.